# EXHIBIT 13

**Rescission and Settlement Agreement**

## RESCISSION AND SETTLEMENT AGREEMENT

This Rescission and Settlement Agreement (the "Agreement") is entered into by and between the parties as defined herein for the consideration therein stated.

### 1. PARTIES

The **"Parties"** to this Agreement are the entities defined below:

1.01   H.E.B., LLC, a Nevada limited liability company ("HEB"), which additionally owns the interest of SAH, LLC and/or SHAC, LLC.

1.02   Michael Tolson ("Tolson").

1.03   Digitally Secured Communications, Inc., a Nevada corporation ("DSC").

### 2. DEFINED TERMS

2.01   The **"Bankruptcy"** shall mean the pending involuntary Chapter 7 bankruptcy of DSC with Case No. 04-33149 in the United States Bankruptcy Court for the Northern District of California, San Francisco Division.

2.02   The **"Lawsuit"** shall mean the adversary proceeding seeking rescission filed by HEB and Tolson against DSC with Cause No. 06-3123 TC in the Bankruptcy.

2.03   The **"Order Approving Agreement"** shall mean the document to be proposed to the Court and entitled 'Order Approving Agreement', a true and correct copy of which is attached hereto, incorporated herein by this reference, and marked as Exhibit "A".



1

2.04    The **"Escrow Agreement"** shall mean the document entitled 'Escrow Agreement', a true and correct copy of which is attached hereto, incorporated herein by this reference, and marked as Exhibit "B".

2.05    The **"Payment Terms"** shall mean the following:

HEB's payment to DSC of either $1,000,000.00 or, $800,000 if made in full by January 24, 2007, or $850,000 if made by March 24, 2007, pursuant to the following schedule:

     a.    $25,000.00 on or before October 27, 2006, the receipt and sufficiency of which is acknowledged, as a good faith deposit to be credited against the November 10, 2006 payment of $250,000.00 set forth in section 2.05(b) below;

     b.    $225,000.00 on or before November 14, 2006;

     c.    $250,000.00 on or before January 24, 2007;

     d.    $175,000.00 on or before March 24 2007;

     e.    $175,000.00 on or before June 23, 2007;

     f.    $150,000.00 on or before October 23, 2007, unless payments (a.) through (e.) are paid in full on or before March 24, 2007 in which case the October 23, 2007 payment of $150,000.00 set forth in this subsection (f.) shall not be required to be paid under this Settlement Agreement and will be deemed waived and satisfied. If, prior to January 24, 2006, HEB pays a total of $800,000, that payment shall be deemed payment in full under the terms this Agreement.



2.06 The "**Effective Date**" shall mean the day on which this Agreement is signed by all Parties.

2.07 The "**DSC Payment and Notice Center**" shall mean the following persons and addresses where HEB shall send its payments and notices: Commercial Escrow Services, Inc., Attn: Antoinette Hardstone, 3478 Buskirk Ave., Suite 242, Pleasant Hill, CA, 94523, (800) 279-2423, fax (925) 933-9965 copy to (2) Curt Somoza c/o Chris D. Kuhner, Kornfield, Paul & Nyberg, P.C. 1999 Harrison Street, Suite 2675, Oakland, CA, 94612, (510) 763-1000, fax (510) 273-8669; c.kuhner@kornfieldlaw.com

2.08 The "**HEB Notice Center**" shall mean the following persons and addresses where DSC shall send its notices: (1) Scott Haire, 2225 E. Randol Mill Road, Suite 305, Arlington, Texas 76011; and copy to (2) Henry W. Simon, Jr., BARLOW, GARSEK & SIMON, L.L.P., 3815 Lisbon Street, Fort Worth, Texas 76107.

## 3. RECITALS AND AUTHORITY

3.01 HEB and Tolson initiated the Lawsuit against DSC for contractual rescission.

3.02 DSC agrees to stipulate to judgment for rescission; DSC agrees, as set forth in the Escrow Agreement, to transfer its seventy-five (75) percent ownership interest in Envoii Technology, LLC. ("Envoii") to HEB to be held in escrow until the Payment Terms are met; when the Payment terms are met, the Curtis D. Somoza Living Trust shall have a twenty-five (25) percent ownership interest in Envoii; HEB agrees to satisfy the Payment Terms, subject to opportunities to cure any

default; DSC, HEB and Tolson agree to the entry of the Order Approving Settlement in this Lawsuit. If there is a payment default under Section 7.02, then the seventy-five (75) percent reverts back to DSC without process or action and the parties agree not to contest said transfer.

3.03    Upon approval of the Agreement by the Bankruptcy Court, HEB and Tolson shall dismiss with prejudice the Bankruptcy.

3.04    Until the Payment Terms are met, in the absence of defaults, Scott A. Haire shall exercise full authority as acting Sole Manager of Envoii in prosecuting the patents and to improve the technology and to arrange new licenses as set forth below. In the event there is a payment default, all management authority is terminated and Scott A Haire shall no longer have any authority to act as Sole Manager or any other authority to act on behalf of Envoii. Scott A Haire shall execute a signed written resignation letter to be held in escrow to be submitted in the event there is a payment default. At such termination date, Scott Haire shall be removed as a manger of Envoii without protest and Curt Somoza shall have the right to immediately appoint a new Sole Manager without any further agreement or process. During the payment period, the assets of Envoii and any of its technology shall not be sold, transferred, encumbered, and/ or pledged. If and when the payment terms are met, all restrictions cease.

In the event Envoii enters into any agreement relating to its technology which extends past the payment period, that agreement shall be deemed null and void upon any default in payment.

The parties hereby acknowledge that the purpose of this provision is that if there is a payment default Curt Somoza has the unconditional and absolute right to immediately terminate and remove Scott Haire, or any of his agents, assigns or designates, as Sole Manager of Envoii or to act on behalf of Envoii, and that Curt Somoza shall be authorized to immediately appoint a new manager. In the absence of payment default, Mr. Haire shall have the right to exercise full authority as set forth herein.

## 4.      PURPOSES AND CONSIDERATION

4.01      The purpose of this Agreement is to provide for the undertakings, payments, and releases set forth herein. None of the Parties admits to or concedes any wrongful behavior on its part.

4.02      The consideration for this Agreement consists of the mutual covenants, payments, the receipt and sufficiency of which are hereby acknowledged, and entry of the Order Approving Agreement.

## 5.      PAYMENT

5.01      An installment payment shall be deemed timely paid or made only if it is addressed to the DSC Payment and Notice Center and transmitted by wire or received on or before the applicable due date. Payment shall me made to the Commercial Escrow Service.  s If the applicable

due date falls on a Saturday, Sunday, or federal holiday, then such installment payment shall be deemed timely if received on the first subsequent day that is not a Saturday, Sunday, or federal holiday. Default shall be defined in the Escrow Agreement of even date herewith.

## 6. ENTRY OF ORDER APPROVING AGREEMENT

6.01    On or before the Effective Date, DSC and HEB shall each execute the Order Approving Agreement. The Parties shall jointly or by other acceptable means present the Order Approving Agreement for entry to the United States Bankruptcy Court for the Northern District of California, San Francisco Division.

## 6. DELINQUENCY AND DEFAULT

7.01    If any installment is not timely paid, the Escrow Company shall send a written notice of delinquency to the HEB Notice Center (and to the DSC Notice Center if sent by the Escrow Company). The parties acknowledge and agree that the it is the responsibility of HEB to confirm whether a payment was made.

7.02    Subject to the following restrictions, HEB has the option to cure a delinquency within seven (7) days of the original due date pursuant to a notice of delinquency. If HEB fails to cure the delinquency within that applicable time frame, then (1) the entire amount of payments already made to DSC shall represent liquidated damages and will be non-refundable, (2) any and all revenue generated under the License Agreement shall be the revenue of Envoii and accounted for as such;

$\mathcal{SBH}$

and (3) Scott A Haire shall be immediately removed as Sole Manager as provided, among other things, in 3.04.

7.03 A curing of delinquent payment shall be deemed timely paid or made _only_ if it is addressed to and received by the DSC Payment and Notice Center on or before the applicable due date. If the applicable due date falls on a Saturday, Sunday, or federal holiday, then such curing of delinquent payment shall be deemed timely if received on the first subsequent day that is not a Saturday, Sunday, or federal holiday.

## 8.    EXPLANATION OF DELAY IN PROSECUTION OF PATENT(S)

8.01 The Parties understand that certain patents identified as part of the March 8, 2004 contract, a listing of which is attached hereto as Exhibit "C" continue to pend before the United States Patent and Trademark Office ("USPTO"). Each Party, upon request of the other or the USPTO, will provide due and adequate explanation regarding the prior legal proceedings in state and federal bankruptcy court and the consequent effect of delaying the prosecution of the patent applications.

## 9.    RELEASE OF LIABILITY

9.01 Upon the complete execution of this Settlement Agreement, HEB and Tolson release DSC from any and all claims or causes of any kind relating to the contractual agreements made the



basis of the Lawsuit or which were or could have been brought in the Lawsuit.

9.02    Upon the complete execution of this Settlement Agreement, DSC releases HEB and Tolson from any and all claims or causes of any kind relating to the contractual agreements made the basis of the Lawsuit or which were or could have been brought in the Lawsuit.

## 10.    MISCELLANEOUS PROVISIONS

10.01   This Agreement may be modified or terminated only by means of a written memorandum executed by the Parties hereto.

10.02   THIS AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA. THE PARTIES AGREE THAT THIS SETTLEMENT AGREEMENT WAS NEGOTIATED IN SAN FRANCISCO COUNTY, CALIFORNIA AND IS PERFORMABLE IN SAN FRANCISCO COUNTY, CALIFORNIA. ANY LAWSUIT TO ENFORCE THE PROVISIONS OF THIS SETTLEMENT AGREEMENT MUST BE FILED IN SAN FRANCISCO COUNTY, CALIFORNIA.

10.03   For purpose of construction, "and" shall also mean "or" and vice versa. The singular shall also include the plural and vice versa.

10.04   This Agreement contains the entire understanding between the Parties concerning the

subject matter contained herein, supersedes all prior or contemporary oral agreements or written agreements, and survives the entry of the Order Approving Agreement.

10.05 The Parties acknowledge that they or their designated representatives have read all of this Agreement, and acknowledge that the Parties are accepting the benefits of this Agreement after consulting with counsel. This Agreement is the joint effort of counsel for the Parties. The Parties waive the common law rule of strict construction against the drafter. This Agreement is to be liberally construed to accomplish its purposes.

10.06 This Agreement may be executed in any number of identical counterparts, each of which shall be deemed to be an original for all purposes.

10.07 Each signatory warrants that he or she has full authority to sign this Agreement and to bind the Party that it, he or she purports to represent.

10.08 This Agreement shall be binding upon and inure to the benefit of the Parties and their respective agents, executors, heirs, successors and assigns. All Parties agree to execute such documents as are reasonably required to fully perform this Agreement.

10.09 The Parties agree that the Order Approving Agreement, as approved by the Parties, shall not be subject to reconsideration or appeal. Such rights are expressly waived in the interest of achieving finality.

To signify their consent to the terms of this Settlement Agreement, DSC, HEB and Tolson have signed below.

> **Digitally Secured Communications, Inc., a Nevada corporation**
>
> By: _____
>
> Curtis D. Somoza, as President of Digitally Secured Communications, Inc., a Nevada corporation
>
> Dated: This _____ day of _____, 2006.

| | |
|---|---|
| THE STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF _____ | § |

This instrument was acknowledged before me on this _____ day of _____, 2006, by Curtis D. Somoza in the capacity stated herein.

> _____
> **Notary Public, State of California**

Michael Tolson

_____

Michael Tolson

Dated: This _____ day of _____, 2006.

THE STATE OF TEXAS        §
                          §
COUNTY OF TARRANT         §

This instrument was acknowledged before me on this _____ day of _____, 2006, by Michael Tolson in the capacity stated herein.

_____

**Notary Public, State of Texas**



ERIC A. NYBERG, ESQ.
(Bar No. 131105)
CHRIS D. KUHNER, ESQ.
(Bar No. 173291)
KORNFIELD, PAUL & NYBERG,
P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for Alleged Debtor
Digitally Secured Communications, Inc.

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 04-33149 TC |
|---|---|
| **DIGITALLY SECURED COMMUNICATIONS, INC.,** | Chapter 7 |
| | **ORDER APPROVING AGREEMENT** |
| Debtor. | |

Date: November 7, 2006
Time: 9:00 a.m.
Place: 23rd Floor
   **United States Bankruptcy Court**
   **235 Pine Street**
   **San Francisco, California**

The Court having considered the joint application of, H.E.B., LLC ("HEB"), Michael Tolson ("Tolson") and Digitally Secured Communications, Inc. ("DSC") in the above-referenced involuntary bankruptcy case for approval of the Rescission and Settlement Agreement dated October 31, 2006 (the "Agreement")entered into by the parties, and good cause appearing therefor;

**IT IS HEREBY ORDERED** that the Agreement containing the terms and conditions set forth herein is approved;

Order Approving Agreement

EXHIBIT A

Kornfield, Paul & Nyberg, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

1      **IT IS FURTHER ORDERED** that the Court finds that the parties have entered into the

2 agreement in good faith as that term is defined under the applicable law and that the Agreement is the

3 result of arms length negotiations;

4

5      **IT IS FURTHER ORDERED** that all known creditors in this bankruptcy proceeding case are

6 signatories on the Agreement and as such, any requirement to notice the terms of the Agreement to

7 creditors pursuant to Federal Rule of Bankruptcy Procedure 9019, or any applicable rule or law is not

8 necessary and hereby waived by the parties;

9

10      **IT IS FURTHER ORDERED** that the parties are authorized to take all necessary steps and to

11 sign all necessary documents to effectuate the terms of the Agreement; and

12

13      **IT IS FURTHER ORDERED** that the terms and conditions of the Agreement are fair and

14 reasonable and are in the best interest of the pending bankruptcy proceeding and parties in interest.

15

16 Dated: _____

                              U. S. BANKRUPTCY COURT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

Order Approving Agreement                    -2-             J:\DigitallySecured.001\Order-Approve-Agmt.wpd
                                                                        10/31/06 10:45 am

Kornfield, Paul & Nyberg, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612-3525
(510) 763-1000
FAX (510) 273-8669

COMMERCIAL ESCROW SERVICES, INC.
has been issued an Escrow Agent's license by the California Department of Corporations
320 West Fourth Street, Suite 750, Los Angeles, Ca. 90013-1105, License No. 963 5075.

3478 BUSKIRK AVENUE, SUITE 242, PLEASANT HILL, CA 94523
PHONE: (925) 933-9960   /   FAX: (925) 933-9965
DATE: November 1, 2006
ESCROW OFFICER: A. HARDSTONE
ESCROW NO: 39-3842-AH        ESCROW INSTRUCTIONS

PARTIES TO THIS ESCROW: This escrow is established by and between Digitally Secured
Communications, Inc., a Nevada corporation, hereinafter referred to as ("DSC") and H.E.B., LLC, a
Nevada limited liability company, hereinafter referred to as ("HEB"), collectively referred to as ("Principals
or Parties").

PURPOSE OF THIS ESCROW: HEB shall wire payments to escrow referred to on page 2 of "Rescission
and Settlement Agreement" attached hereto for informational purpose only. Upon payments being made,
Escrow Agent shall receive disbursement instructions from DSC in regards to the money as deposited.
Once the total obligation has been deposited into escrow and disbursed this escrow shall considered closed.

ESCROW AGENT DUTIES: The Escrow Agent's duties are to receive either $1,000,000.00 paid by the
extended terms of the "Rescission and Settlement Agreement," or $800,000.00 if made by January 24,
2007, or $850,000.00 if made after January 24, 2007 but before April 1, 2007, and disburse the money as
deposited in accordance with disbursement instructions to be provided by DSC. In the event, payments are
not received on the dates set forth in the "Rescission and Settlement Agreement," Escrow Agent shall notify
all parties with copies to the attorneys of said notification of non-payment and HEB has a 7 day cure period
to deposit said funds, per attached letter attached hereto and made a part hereof. In the event, Escrow
Agent does not receive the payment within the 7 day cure period, without further authorization from the
parties, Escrow Agent shall return the Amendment to Membership Agreement that has been prepared and
executed outside of escrow, back to DSC, and this escrow will be considered closed. Upon all payments
being made timely in accordance to the "Rescission and Settlement Agreement," and without further
authorization from the parties, Escrow Agent shall remit to HEB the Amendment to Membership
Agreement, and this escrow will be considered closed.

NOTICES: All notices, requests, demands, and other communications under this escrow shall be either in
writing or sent by facsimile transmission with written confirmation mailed and shall be deemed to have been
duly given on the date of service if served personally, or sent by facsimile transmission, or on the second
day after mailing if mailed to the party to whom notice is to be given, by first class mail, registered or
certified, postage prepaid and properly addressed.

All funds received into escrow shall be deposited with other escrow funds in a general trust account of
Commercial Escrow Services, Inc., unless otherwise instructed.

These instructions are not intended to amend, modify, or supersede any prior agreement that may contain
any conditions and/or contingencies by and between the Principals that may not be set forth in these
instructions. Unless otherwise provided herein, Escrow Agent shall not be concerned with any conditional
sales contract, lease contract, or security agreement that may affect the herein referred to personal property,
and Escrow Agent is not responsible for the delivery of any papers other than those described herein.
Escrow Agent is not a party to, or bound by any agreement which may be deposited into escrow, evidenced
by, or arise out of these instructions.

Escrow Agent is not a party to, or bound by, any provisions contained in any property which may be
deposited under, evidenced by, or arise out of these instructions, and with respect thereto, acts as a
depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness,

EXHIBIT B

genuiness or validity of any Property or with respect to the form or execution of the same, or the identity, authority or right of any person executing or depositing the same. Initial: _____ _____

Escrow Agent shall not be required to take or be bound by notice of any default of any person, including any Principal, or to take any action with respect to such default whether or not such action involves any expense or liability. These instructions shall not be subject to modification or rescission except upon receipt by Escrow Agent (at the office named above) of written instructions from each of the principals or their successors in interest, and no such rescission or modification shall be effective unless consented to by Escrow Agent in writing.

Principals hereby indemnify and hold Escrow Agent harmless against any loss, liability, damage, cost or expense, including reasonable attorneys' fees, (a) related in any way to Escrow Agent's acting upon any notice, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be signed by Principals or any other proper person, and (b) incurred in connection with any act or thing done hereunder.

Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith or for any mistake of fact or law or for anything which Escrow Agent may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct. Escrow Agent shall have duties only to the Principals, and no person shall be deemed a third party beneficiary of these instructions.

Escrow Agent may consult with legal counsel in the event of any dispute or question as to the construction of these instructions or Escrow Agent's duties thereunder, and Escrow Agent shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of counsel.

In the event of any disagreement between the Principals, or any of them or any other person or persons whether or not named in these instructions, and adverse claims or demands are made in connection with or for any of the Property, Escrow Agent shall be entitled at its option to refuse to comply with any such claim or demand so long as such disagreement shall continue, and in so doing, Escrow Agent shall not be or become liable for damages or interest to the Principals, or any of them, or to any other person or persons for Escrow Agent's failure or refusal to comply with such conflicting or adverse claims or demands. Escrow Agent shall be entitled to continue so to refrain and refuse so to act until:

   (a)  - the rights of the adverse claimants have been full adjudicated in a court assuming and having a jurisdiction of the claimants and the Property; or

   (b)  - all differences shall have been adjusted by agreement, and Escrow Agent shall have been notified thereof in writing by all persons deemed by Escrow Agent, in its sole discretion, to have an interest therein.

In addition, Escrow Agent in its sole discretion, may file a suit in interpleader for the purpose of having the respective rights of all claimants adjudicated, and may deposit with the court all of the Property; and the Principals agree to pay all costs and counsel fees incurred by Escrow Agent in such action; said costs and fees to be included in the judgment in any such action.

In consideration of acceptance of this appointment by Escrow Agent, the Principals agree to indemnify and hold Escrow Agent harmless as to any liability incurred by Escrow Agent to any person, firm or corporation by reason of its having accepted same or in carrying out any of the terms hereof, and to reimburse Escrow Agent for all its expenses, including among other things, counsel fees and court costs incurred by reason of its position or actions taken pursuant to these Escrow Instructions. The Principals hereby agree that the Escrow Agent shall not be liable to any of them for any actions taken by Escrow Agent pursuant to the terms hereof.

Escrow Agent is hereby authorized, in its exclusive discretion, to obey and comply with all writs, orders, judgments or decrees issued by any court or administrative agency affecting any money, documents or things held by Escrow Agent. Escrow Agent shall not be liable to any of the parties hereto, their successors, heirs or personal representatives by reason of Escrow Agent's compliance with such writs, orders,

judgments or decrees, notwithstanding such writ, order, judgment or decree is later reversed, modified, set aside or vacated. Initial: _____

If any action is brought to interpret or enforce these instructions, or any part hereof, the Principals jointly and severally agree to pay to Escrow Agent all Escrow Agent's fees, accounting fees, special and extra service fees, and other costs related to such action.

In the event the escrow established hereby is canceled, the Principals jointly and severally shall nevertheless pay to the Escrow Agent the initial fee together with all costs and expenses of Escrow Agent incurred to date of cancellation. Notwithstanding anything in these instructions to the contrary, Escrow Agent may, in its sole discretion, upon thirty (30) days written notice to all of the Principals, resign as Escrow Agent and Escrow Agent shall be entitled to reimbursement for those costs and expenses incurred to the date of such resignation. Upon cancellation by the Principals or resignation by Escrow Agent, after deducting Escrow Agent's fees, costs and expenses, the balance of any funds or Property shall be disbursed as mutually instructed by the respective Principals who shall have deposited same, or in the event the Principals do not agree, Escrow Agent shall deposit with the Clerk of the Alameda County Superior Court in any action then pending between the Principals or in an inter-pleader action.

In the event that:

    (a)  Escrow Agent performs any services not specifically provided herein or

    (b)  there is an assignment or attachment of any interest in the subject matter of the escrow established hereby or any modification thereof, or

    (c)  any dispute or controversy arises hereunder, or

    (d)  Escrow Agent is named a party to, or intervenes in, any litigation pertaining to this escrow or the subject matter thereof, Escrow Agent shall, in addition to fees and charges for ordinary services, be reasonably compensated therefore and reimbursed for all costs and expenses, including but not limited to attorneys' fees, occasioned thereby.

Escrow Agent shall have a first lien on the Property for such compensation and expenses, and the Principals agree jointly and severally to pay the same to Escrow Agent.

The Principals shall pay Escrow Agent shall be entitled to an initial, non-refundable set-up fee ("initial fee") of $2,100.00, payable concurrently with its acceptance, and to additional compensation as follows: none.

The Principals understand that Escrow Agent will charge additional fees, including premium hourly fees, for any services performed according to these Escrow Instructions, or any modification or any service not specifically provided therein, that involve concerted effort, employees working overtime, expedited handling of any aspect of the Escrow, or other similar services.

These escrow instructions may only be amended by a writing signed by all Principals.

The Principals will deposit with Escrow Agent funds and documents required from them to enable Escrow Agent to comply with all the conditions of these Instructions on or before OCTOBER 31, 2007, with automatic extensions subject to other provisions of this agreement..

These instructions may be executed in counterparts, each of which so executed shall be deemed as original, irrespective of the date of its execution and delivery, and said counterparts together shall constitute one and the same instrument.

EACH OF THE UNDERSIGNED STATES THAT THEY HAVE READ, UNDERSTAND, AND AGREE TO THESE INSTRUCTIONS. ESCROW AGENT IS NOT AUTHORIZED TO GIVE LEGAL ADVICE. IF THE PRINCIPALS DESIRE LEGAL ADVICE, CONSULT YOUR ATTORNEY BEFORE SIGNING.

| DSC: | Date: | HEB: | Date: |
|------|-------|------|-------|
| Digitally Secured Communications, Inc. | | H.E.B., LLC | |

By:_____

Curtis D. Somoza, President

By:_____

Scott A. Haire, Managing Member

Mailing address:_____     Mailing Address: _____
_____     _____

2225 E RANDOL MILL RD STE 305
ARLINGTON, TX 76011-6306

## EXHIBIT C

### Assets

1. The name "Envoii, Inc.", "Envoii" and all derivatives or combinations thereof.

2. The URL "envoii.com".

3. The following main patent applications:

| Patent Application Title | Patent Application Serial # | App filing date | Status | Reel/Frame # |
|---|---|---|---|---|
| Method and Apparatus for a Distributable Envoii Object | 09/852,971 | 5/8/2001 | Pending | 012639/0315 |
| Method and Apparatus for Enabling a Portable Graphic Object | 09/852,979 | 5/8/2001 | Pending | 012152/0362 |
| Method and Apparatus for a Distributable Object Architecture | 09/852,963 | 5/8/2001 | Pending | 012440/0756 |

4. The following secondary patent applications:

| Patent Application Title | Patent Application Serial # | App filing date | Status | Reel/Frame # |
|---|---|---|---|---|
| Method and Apparatus for a Portable Information Account Access Agent | PCT/US01/28130 | 9/6/2001 | Pending status expected May, 2003 | No assignment yet executed or recorded |
| Method and Apparatus for a Distributable Globe Graphical Object | 09/954,724 | 9/12/2001 | Pending | 012690/0924 |

5. Envoii source code: Full Perforce-based source code-platform repository along with binaries, documents, and samples up through version 2.75.

6. All trade-names, trade-marks, trade-mark registrations and applications, service marks and service mark registrations and applications, copyrights and copyright registrations and applications, processes, formulae, proprietary and technical information, know-how, trade secrets and inventions, including, in the case of each of the above.

# EXHIBIT C

EV-000022

7. The following contracts and agreements:

| Client | Status | License type | Signed | Expires | Renewal | Envoii termination w/o cause? |
|---|---|---|---|---|---|---|
| Envoii Healthcare LLC | Active | Deployment license | 6/14/2002 | 6/13/2005 | Automatic | No |
| Fujitsu Parex | Active | Deployment license | 2/14/2002 | 2/14/2003 | Automatic | No |
| Fujitsu Parex | Active | Development license | 2/14/2002 | 2/14/2003 | Automatic | No |
| Fujitsu Parex | Active | Maintenance license | 9/2/2002 | 2/14/2003 | Automatic | No |
| Virtual Payment Systems | Active | Deployment license | 2/28/2003 | 2/28/2005 | Automatic | No |

8. The following current and fixed assets:

| | All amounts in US $ |
|---|---|
| Computers purchased 2003 | 10,895.00 |
| File Server purchased in 2004 | 8,775.41 |
| Computer Equipment | 7,482.99 |
| Office Furniture | 2,282.32 |
| Office Equipment | 181.39 |
| SUBTOTAL FIXED ASSETS | 9,946.70 |
| TOTAL ASSETS | 39,563.81 |

16

EV-000023

H.E.B., LLC, a Nevada limited liability company

By: _____

Scott A. Haire, as Managing Member of H.E.B., LLC, a Nevada limited liability company

Dated: This 17TH day of November, 2006.

THE STATE OF TEXAS      §
                                §
COUNTY OF TARRANT      §

This instrument was acknowledged before me on this 17TH day of Nov., 2006, by Scott A. Haire in the capacity stated herein.



LUCY J. SINGLETON
MY COMMISSION EXPIRES
February 26, 2008

_____
Notary Public, State of Texas